ERVIN, Judge,
dissents.
I disagree with the majority’s affirmance since I am of the opinion Section 337.143 fails to state a public purpose and therefore violates Article VII, Section 10 of the Florida Constitution. The statute applied only to contracts for which bids had already been received. Prior to the passage of Ch. 74-262, the terms of the individual contracts had been already set. The statute was passed not to increase the quality of roads or the number of miles paved, but had the effect of increasing the prices fixed for existing contracts by tying the price of asphalt, containing as it does petroleum, to post-oil embargo prices. No rational contractor would accept a statutory price indexing scheme for all his contracts unless he was assured an increase in payment.
The possibility of a drop in oil prices so low that payments would dip below the original price bid is remote indeed. This certainly was not the legislative intent as evidenced by Ch. 74-262:
WHEREAS, the price of bituminous material has substantially increased during the past months due partly to the worldwide energy crises, and the situation now and in the future appears to be very volatile and unstable, and
WHEREAS, a contractor has no control over the rapidly increasing prices of bituminous material after he has successfully bid on a road construction project with the Department of Transportation, and after entering into binding contracts for the supply of bituminous material, and
***** *
WHEREAS, contractors on projects for which bids were received by the Department of Transportation prior to April 1, 1974 will suffer irreparable economic harm and injury in performing their contracts upon the failure of the Legislature to enact this law, NOW THEREFORE .... (e.s.)
If any doubt remains as to the purpose behind Section 337.143, note the statutory language added in 1976:
(1) Recognizing that the unprecedented increase in the cost of petroleum products seriously affects a vital segment of the construction industry* legislative intent was, and is, to protect, by this act, said industry from irreparable economic harm and injury.
It is clear the argument that plunging prices may produce a windfall to the state is an after the fact justification. The primary purpose of this statute is to provide extra payment to contractors who have done no extra work in return. Any benefit to the public is only incidental.
Chapter 74-262 includes a finding that “irreparable harm” would result from the performance of existing contracts. A search of the legislative history of the bill does not reveal the basis for this conclusion. A finding of “irreparable harm” is akin to a judicial function, requiring evidence, consideration of precedent and the arguments of affected parties. The Supreme Court of Washington struck down a similar finding in an act as an invalid legislative incursion into powers reserved to the judiciary.[1] That act, .in providing relief to road builders, found performance of existing contracts was “economically impossible.”
I would not go so far to say the Florida law is constitutionally defective because of *609 the finding in the preamble of “irreparable harm.” But, at the same time, I would not consider the law valid as fulfilling a primary public purpose simply because of such language. Compare Tampa v. State, 155 Fla. 177, 19 So.2d 697 (1944). The only defense an asphalting contractor would normally have after nonperformance would be economic impossibility due to changed circumstances. This is a legal determination, based on the individual facts and circumstances. Even if we equate “irreparable harm” with impossibility, the act has validity only if we presume asphalting contractors en masse would default on their contracts. Obviously such a remote scenario would result in roads not being built and contracts unfulfilled. Otherwise contractors would be liable for their nonperformance. I am loathe to accept any implied legislative finding of impossibility since it is premised upon so tenuous a potentiality. No doubt consumers and other business groups have also suffered from rising oil prices, but have made do without legislative relief.
I would reverse and find Section 337.143 unconstitutional.

. City of Tacoma v. O’Brien, 85 Wash.2d 266, 534 P.2d 114 (1975).